Walter **MURRY**

v.

**ARAN ENERGY CORPORATION.**

Civ. A. No. 94–0021.

United States District Court, E.D. Louisiana.

Sept. 20, 1994.

---

**3.** *Bearry v. Beech Aircraft Corporation,* 818 F.2d 370, 374 (5th Cir.1987).

Lester J. Waldmann, Waldmann & Harrington, Gretna, LA, for plaintiff.

Jon Daniel Picou, Morgan J. Wells, Jr., Jeffrey I. Mandel, Leininger, Larzelere & Picou, Metairie, LA, for defendants.

### *RULING ON MOTION*

LIVAUDAIS, District Judge.

Defendant Aran Energy Corporation ("Aran") filed a motion for summary judgement on the issue of liability, contending that no issues of material fact exist and seeking dismissal of plaintiff's claims against it. Plaintiff, Walter Murry, opposes the motion.

Aran, the owner of a fixed platform located off the Louisiana coast in the Gulf of Mexico, contracted the operation of the platform to Steen Production Service, Inc. Aran also contracted with Tiger Cleaning Services ("Tiger") for Tiger to clean tanks on the platform. Plaintiff was working on the platform as a roustabout in the employ of Tiger at the time of his accident.

On January 5, 1993, the morning after his arrival on the platform, plaintiff was instructed by his supervisor, an employee of Tiger, to turn on the air pack for employees working in the tanks. To perform this task, plaintiff crossed the platform and stepped over a stack of cables lying on the platform. The stack was approximately two to three inches high and one foot wide. After completing his task, plaintiff headed back across the platform, stepping over the cables again. This time, he stepped on a liquid film measuring approximately two feet by three feet, slipped and fell, landing atop the cables and injuring his lower back.

Defendant moves for summary judgement on plaintiff's two theories of recovery under Louisiana Law. Plaintiff contends that Aran, as owner of the platform, is liable for his injuries under either 1) Article 2317 and 2322 strict liability, or 2) Article 2315 negligence. Both of plaintiff's theories rest on his assertion that the platform had a defect. This defect, plaintiff argues, was a depression or low spot which caused an unknown liquid to accumulate and form a film, which film caused plaintiff to slip and injure himself on the cables. Defendant maintains that there is no evidence that a defect existed, and furthermore, that Aran maintained no control over the platform and therefore did not create any hazardous conditions.

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Fifth Circuit has held that the moving party may satisfy this burden by either:

1) submit[ing] evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or 2) *if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate[ing] that the evidence in the record insufficiently sup-*

*ports an essential element of the opponents claim or defense.*

*Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 190 (5th Cir.1991).

■ In opposing a properly supported motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials [in its] pleading, but the [non-moving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining the existence of a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

■ However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgement; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Plaintiff bases his strict liability argument on *Olsen v. Shell Oil Co.,* 365 So.2d 1285 (La.1978). In *Olsen,* the Louisiana Supreme Court held that under Louisiana Civil Code Article 2322, the owner of an offshore fixed drilling platform is liable for injuries resulting from a defective condition which causes a breaking or explosion of an appurtenant or component part of the platform. 365 So.2d at 1293.

Plaintiff maintains that a low spot or dent in the platform caused the accumulation of film near the cable stack, and therefore argues that Aran is liable because this "defect" caused plaintiff's injuries. However, plaintiff has failed to produce any evidence which tends to show that the cause of the accident was a low spot or depression in the platform. On the contrary, as the defense pointed out, plaintiff stated that the film "was on a flat surface" in his deposition. Furthermore, although plaintiff claims that two witnesses will testify to the existence of the defect, depositions of these witnesses were not submitted. In short, plaintiff has produced no evidence which suggests that a defect in the platform existed.

■ Nevertheless, assuming that a defect in the platform did exist, Article 2322 and *Olsen* are not controlling in the instant case. To impose liability under article 2322, three requirements must be met: 1) There must be a building; 2) the defendant must be its owner; and 3) there must be a "ruin" caused by a vice in construction or a neglect to repair, which occasions the damage sought to be recovered. *Olsen,* 365 So.2d at 1289.

In *Olsen,* the Louisiana Supreme Court concluded that a drilling platform is a building within the meaning of Article 2322, and the parties to the present action agree that Aran owned the platform at the time of the accident. Therefore, the only remaining issue under 2322 is whether there was a "ruin" caused by a vice or neglect to repair. Plaintiff argues that under *Olsen,* a platform owner is liable for any injuries caused by a defect in the platform. However, this is not an accurate statement.

In *Olsen,* a defective control valve caused a water heater to explode. The water heater was inside a living quarters attached to an offshore drilling rig by a drilling contractor and several of the contractor's employees were killed or injured in the explosion. 365 So.2d at 1287–88. The Louisiana Supreme Court held that the breaking or explosion of an appurtenant or component part of the platform was a "ruin" within the meaning of article 2322. *Id.* at 1292–93. In *Olsen,* the faulty control valve was the defect which caused the "ruin"; damage to the platform resulting from the explosion. In the instant case, Plaintiff argues that the dent itself is a "ruin" under 2322. However, in a recent Louisiana case interpreting article 2322, the

First Circuit explained, "The ruin contemplated by this article is apparently the actual fall or collapse of a building, some part of the building must break or give way." *Tillman v. Johnson,* 610 So.2d 866, 870 (La.App. 1st Cir.1992).

Therefore, under Article 2322 the mere existence of a defect is not what imposes liability on a building owner as Plaintiff contends. There must be a defect or vice which causes a partial destruction or collapse of the building. Clearly, a low spot on an offshore platform is not a "ruin" within the meaning of article 2322.

Plaintiff also argues that the more general strict liability article, 2317 is applicable in this case. Although it is true that under 2317 the owner of a building must prevent the building from causing an unreasonable risk of injury to others, to establish that an unreasonable risk existed, a plaintiff must prove that a defect created that unreasonable risk.[1] For the purposes of 2317, a defect is a flaw or condition of relative permanence inherent in the thing as one of its qualities. A temporary condition may constitute a hazard, but it does not constitute a defect under 2317. *Crane v. Exxon Corp.,* 613 So.2d 214, 218–19 (La.App. 1st Cir.1992).

As already stated, Plaintiff has repeatedly asserted that a depression or dent in the platform caused an unknown liquid to accumulate, creating the film in which plaintiff to slipped. This low spot is the defect on which plaintiff bases his 2317 claim. However, he has supplied no evidence to support this assertion. Under the definition above, the film itself would not constitute a defect because it was a temporary condition on the platform, not an inherent quality of the platform itself.[2]

The most important element of plaintiff's strict liability claim under articles 2317 and 2322, is the existence of a defect and plaintiff has failed to provide any information which suggests. that a . defect existed. However, Plaintiff also contends that Aran is liable for his injuries under Article 2315, and directs the Court's attention to the recent case of *Dupre v. Chevron U.S.A., Inc.,* 20 F.3d 154 (5th Cir.1994), wherein the Fifth Circuit reversed a summary judgement entered by a judge from this district on a negligence claim.

In *Dupre,* an employee of Sundowner Services, Inc. ("Sundowner") was killed when he fell off a rig in the Gulf of Mexico while attempting to loosen a blower motor. Sundowner's rig was attached to a platform owned by Chevron, and the installation of the Sundowner rig had altered the platform so that portions of the rig were not protected by Chevron's platform perimeter guardrails. Although Chevron did not actively participate in the installation of the rig, it did approve the plans for the placement of the rig, and was therefore aware that portions of it would not be protected by guardrails.

In reversing the grant of summary judgement, the *Dupre* court found that Chevron owed a duty to the decedent under Article 2315.[3] 20 F.3d at 158. Chevron's awareness and approval of the plan which created the dangerous condition was an important factor in the court's decision. *Id.* at 158. That is, Chevron had a duty to protect the decedent from falling off the rig because it knew that a dangerous condition (the absence of guardrails) in fact existed.

As in strict liability actions, for a plaintiff to prevail in a negligence action, he must prove that a defect created an unreasonably dangerous condition. The Louisiana Supreme Court explained the similarity be-

---

**1.** In an action for strict liability the plaintiff must prove: 1) the thing which caused the damages was in the care custody and control of the defendant; 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by the defect. *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La. 1990).

**2.** The temporary nature of the film was indicated by the plaintiff in his deposition when he stated

that the film had begun to dry and was turning brown around the edges.

**3.** In *Dupre,* the court followed the duty/risk analysis which Louisiana courts use to apply Article 2315: 1) was the defendant's conduct a cause-in-fact of the harm?; 2) was a duty imposed on the defendant by a general rule of law to protect this plaintiff from this type of harm arising in this manner; and 3) was the duty breached? 20 F.3d at 156.

**320**

tween the two actions in *Oster v. Dept. of Trans. and Development,* 582 So.2d 1285 (La. 1991) stating,

> Under either theory, the plaintiff must prove 1) the thing which caused the damage was in the custody of the defendant; 2) the thing contained a 'defect' (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and 3) the 'defective' condition of the thing caused the injuries. *Sistler v. Liberty Mutual Insurance Company,* 558 So.2d 1106 (La.1990). In essence the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the 'defect' under a strict liability theory. Under the negligence theory, it is the defendant's *awareness* of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendants *legal relationship* with the property containing a defect that gives rise to the duty. *Loescher v. Parr,* 324 So.2d 441, 446 (La.1976). Under both theories the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant.

582 So.2d at 1288.

Thus, for a plaintiff to prevail in a negligence action it is necessary for a defect to exist and for the defendant to be aware of that defect; in a strict liability action, it is only necessary that the defect exist. Therefore, under either a strict liability theory or a negligence theory, the crucial component for a plaintiff to prevail is the existence of a defect.

In the instant case, Plaintiff has failed to provide adequate evidence which establishes that the platform on which he was injured was defective. On the contrary, Plaintiff stated in deposition that the surface covered by film was flat. Therefore summary judgement should be granted as to both the strict liability theory and the negligence theory claimed by Plaintiff.

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that the motion of Aran Energy Corporation for summary judgement be and is hereby **GRANTED** as to its strict liability under Louisiana Civil Code Articles 2322 and 2317, and as to its liability for negligence under Louisiana Civil Code Article 2315.